BRD: 08/23/2011

## IN THE COURT OF COMMON PLEAS OF FRANKLIN COUNTY, OHIO

| | |
|---|---|
| MICHAEL P. FARRELL<br>454 East Main Street, Suite 100<br>Columbus, OH 43215,<br><br>          Plaintiff,<br><br>Vs.<br><br>FIA CARD SERVICES<br>Post Office Box 15026<br>Wilmington, DE 19850-5026,<br><br>THE HUNTINGTON NATIONAL BANK<br>41 South High Street<br>Columbus, OH 43215,<br><br>And<br><br>JOHN DOES 1 THRU 3<br>(Names and Addresses Unknown),<br><br>          Defendants. | Case No. 11CVC 08 10090<br><br>Judge<br><br>(Jury Demand Endorsed Hereon)<br><br>2011 AUG 12 PM 2:07<br>CLERK OF COURTS<br>COMMON PLEAS COURT<br>FRANKLIN CO. OHIO<br>FILED |

## COMPLAINT

### COUNT ONE

1. At all times pertinent, Plaintiff, Michael P. Farrell, has been a leader in the business community of Columbus, Ohio, being the President of The Mortgage Firm, Inc., Total Choice Financial Services, LLC, MPF Management, LLC, Total Choice Realty, LLC, and Allstate Total Choice Agencies, among others.

2. At all times pertinent, Plaintiff held all of his financial accounts with The Huntington National Bank of Columbus, Ohio and the said Huntington is

familiar with all of Plaintiff's business and family affairs.

3. In 2007, Plaintiff responded to a Marketing Letter from Huntington National Bank, offering him a $50,000.00 credit card with an APR of 9.99%.

4. At all times pertinent, Plaintiff worked with an associate from Huntington National Bank through the entire time of this Offer and Plaintiff, as well, had a private and business banker with the Huntington, never knowing who FIA Card Services really was.

5. Plaintiff learned that FIA Card Services was a company out of Wilmington, Delaware and was a "contracted company" servicing only the clients that Huntington Bank sent to them.

6. Plaintiff accepted Huntington's invitation and thereafter he began receiving all correspondence regarding this new credit card ending in Account #9197 from FIA

7 After Congress passed legislation regulating credit card companies in their deceptive practices, Plaintiff received his first round of notices from FIA advising him that his payments would be increased from $600.00 per month to $1,200.00 per month.

8. Plaintiff contacted FIA to inquire as to why his payments would be increasing and was told by FIA that the increase was due to Plaintiff's being 3 days late on a scheduled payment, something Plaintiff denied, requesting FIA to demonstrate the truth of its representation to him.

9. Thereafter, FIA raised Plaintiff's monthly payment to the sum of $1,800.00 per month, with an increased APR of 29.99%.

2

BRD: 08/23/2011

10. Plaintiff again contacted FIA demanding an explanation, vehemently arguing with it that he was not late on a payment, and could not obtain relief from FIA to correct its error.

11. In December of 2010, Plaintiff continued to plead his case with FIA and was advised that the only way he could obtain relief in this fiasco was to close the account in question.

12. FIA explained to Plaintiff that if he closed the account, FIA would reduce his payments to $950.00 per month, lower his APR to 5%, and set up a repayment plan for a period of 5 years.

13. Plaintiff, being reluctant to take this course, nevertheless agreed to FIA's terms as he felt his hands were tied in that FIA would not accept his explanation that it had made a mistake.

14. Thereafter, FIA established the balance at that time to be $50,062.16 and told Plaintiff he was required to pay the sum of $1,570.00 to start the program, which Plaintiff did.

15. Thereafter, Plaintiff gave FIA authorization to withdraw from his account the sum of $950.00 on a monthly basis and yet, as reflected by the Statement Period of dated January 11 February 9, 2011, FIA still reflected that he was late in making payments, stating a past due amount in the sum of $487.36 (See Exhibit A annexed).

16. Plaintiff only agreed to the repayment program, provided the same would not have a negative impact on his credit score.

17. Notwithstanding all of Plaintiff's pleas with FIA that it had made a mistake,

3

BRD: 08/23/2011

on February 14, 2011, Plaintiff received a letter from FIA advising him that, all along, he was correct with his rendition of the facts, *viz.*, that FIA had made an error in raising his monthly payments and APR. Annexed hereto as Exhibit B is FIA's correspondence which verifies this fact and reads in pertinent part as follows:

> Thank you for choosing the FIA Card Services credit card with Account Number ending in 9197. We recently identified an error impacting the Non-Promotional Annual Percentage Rate(s) (APR) on your account. After your account was reported lost or stolen, late fee or over limit fee information was inadvertently transferred to your new account. As a result of this error, the APR on your account was increased and it should not have been.
>
> We apologize for this error and any confusion it may have caused. Rest assured, we have corrected the rate(s) on your account and refunded any interest charges that may have been assessed as a result of this error. You will see confirmation of these adjustments on your next monthly billing statement. No action is required on your part.

18. Plaintiff reasserts herein that he made very effort possible to correct FIA's error, all of which fell on deaf ears.

19. Plaintiff is a licensed professional in the lending industry, an insurance agent with Allstate, a registered representative with SEC/FINRA, and his credit is vitally important to him and his businesses.

20. As a result of what occurred in this case, Plaintiff suffered much financial stress and the actions of FIA affected Plaintiff in growing his company and weathering the hard economic times over the past several years.

4

21. Plaintiff was forced to lay off good employees to ensure he had money to pay his creditors and suffered extreme mental stress and anxiety by virtue of FIA representatives calling his office, his home, and his cell phone as if Plaintiff were trying to dodge his financial obligations.

22. Plaintiff states that he did absolutely nothing wrong in this case, that he stayed in constant contact with FIA, and could get no one's attention to address FIA's mistake which it subsequently agreed to.

23. FIA adversely affected Plaintiff's credit rating in closing his account and reporting that the account was closed to the three credit reporting agencies.

24. In a good faith effort, Plaintiff attempted to resolve this dispute with FIA Card Services and Huntington National Bank with his counsel's correspondence of March 10, 2011, annexed hereto as Exhibit C.

25. As FIA did over the past 3 years, this correspondence too fell on deaf ears, Plaintiff never even receiving a response to the correspondence in question.

26. The actions of FIA were wanton and reckless in nature and exceeded acts constituting ordinary negligence.

27. As the direct and proximate cause of FIA's conduct in this case, Plaintiff has suffered economic loss, mental and emotional distress, and such other and further damages as will be proven at the trial of this matter.

## COUNT TWO - FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

28. Plaintiff hereby incorporates Paragraphs 1 through 27 if fully set out herein.

29. Plaintiffs alleges that Defendant, FIA, violated the Consumer Credit

5

BRD: 08/23/2011

Protection Act, 15 U.S.C. 1601, *et seq.*, and Title VIII; Debt Collection Practices Act, Sections 806, 807, 808, 809, and other Sections to be set forth as discovery proceeds.

30. As a result of FIA's violation of the Federal Fair Debt Practices Act, Plaintiff has been damaged.

## COUNT THREE - OHIO FAIR DEBT COLLECTION PRACTICES ACT

31. Plaintiff hereby incorporates Paragraphs 1 through 30 if fully set out herein.
32. Plaintiff alleges that Defendant, FIA, violated the Ohio Fair Debt Collection Practices Act, Section 1319.12, of the Ohio Revised Code, and other State Statutes as will be identified and set forth as Discovery proceeds.
33. As a result of FIA's violation of the Ohio Fair Debt Collection Practices Act, Plaintiff has suffered damages.

## COUNT FOUR - TRUTH IN LENDING (REGULATION Z)

34. Plaintiff hereby incorporates Paragraphs 1 through 33 if fully set out herein.
35. Plaintiff. alleges that FIA violated the Federal Truth in Lending law (Regulation Z), as will be specifically set forth as Discovery proceeds.
36. As a result of FIA's violation of the Federal Truth in Lending Law, Plaintiff has suffered damages.

6

BRD: 08/23/2011

## **COUNT FIVE - PREDATORY LENDING**

37. Plaintiff hereby incorporates Paragraphs 1 through 36 as if fully set out herein.

38. Plaintiff alleges that FIA's actions as described above constituted predatory lending including, but not limited to, unfair, deceptive, or fraudulent practices.

39. As a result of the predatory lending actions of FIA, Plaintiff has been damaged.

## **COUNT SIX - THE HUNTINGTON NATIONAL BANK**

40. Plaintiff hereby incorporates Paragraphs 1 through 39 as if fully set out herein.

41. At all times pertinent, Huntington solicited Plaintiff's business, Plaintiff having no idea of the identity of FIA Card Services when the transaction was consummated.

42. When Plaintiff's payments were increased and his rate was adjusted upward, Plaintiff contacted the Huntington who advised Plaintiff that a lot of customers were upset with the various things FIA Card Services was doing with Huntington clients.

43. Plaintiff states that it was only after contacting Huntington after FIA Card Services changed its agreement with him, he realized that FIA was a *contracted* credit card service company working for or on behalf of Huntington.

7

44. Plaintiff attempted to rectify all of the problems set forth above with Huntington and this too all fell on deaf ears.

45. Plaintiff incorporates Counts One through Five above and all of the allegations as if said allegations are and were being made against Defendant, Huntington National Bank.

### COUNT SEVEN - ATTORNEY FEES

46. Plaintiff hereby incorporates Paragraphs 1 through 45 as if fully set out herein.

47. In addition to all common law and statutory relief to which Plaintiff may be entitled, including attorney fees, Plaintiff sets forth a separate Count for attorney fees in pursuing this matter based on the undisputed facts as alleged above and attached hereto.

### COUNT EIGHT - JOHN DOE #1

48. Plaintiff hereby incorporates Paragraphs 1 through 47 as if fully set out herein.

49. John Doe #1 would have liability to Defendant based on the facts set forth above.

### COUNT NINE - JOHN DOE #2

50. Plaintiff hereby incorporates Paragraphs 1 through 49 as if fully set out

8

BRD: 08/23/2011

herein.

51. John Doe #2 would have liability to Defendant based on the facts set forth above.

### COUNT TEN - JOHN DOE #3

52. Plaintiff hereby incorporates Paragraphs 1 through 51 as if fully set out herein.

53. John Doe #3 would have liability to Defendant based on the facts set forth above.

**WHEREFORE,,** Plaintiff demands Judgment against all Defendants, jointly and severally, for compensatory damages, punitive damages, reasonable attorney fees, all in excess of $25,000.00, and such other and further relief as the Court deems just and proper.

ROBERT C. PAXTON & ASSOCIATES

_____
Robert C. Paxton, II        (0003859)
2142 Riverside Drive
Columbus, OH 43221
Telephone:  (614) 485-9670
Facsimile:   (614) 485-9671
Email: Robert.Paxton@sbcglobal.net
*Counsel for Plaintiff, Michael P. Farrell*

### JURY DEMAND

Plaintiff hereby demands to be heard by a Jury of eight (8) of her peers.

_____
Robert C. Paxton, II        (0003859)

9